May you please support Noreen Schultz representing Petitioner Humbo and with the Court's permission I would like to reserve two minutes for rebuttal. In Ms. Vo's case, the BIA affirmed the IJ's adverse credibility finding based on minor reasons which, under this Court's precedent, do not support an adverse credibility finding and as such should be reversed. First, the BIA affirmed the IJ's findings that Ms. Vo was not credible because of inconsistencies regarding minor details that she could not remember during her asylum interview. Second, the BIA upheld the IJ's adverse credibility finding despite the fact that on multiple occasions the IJ failed to provide Ms. Vo an opportunity to explain those inconsistencies as required by this Court in Baha'u'l-Tara'i. And third, notwithstanding this Court's precedent, the BIA also uses Ms. Vo's omissions of a detail involving sexual assault as another basis to affirm the judge's adverse credibility finding. And finally, the BIA erred in affirming the IJ's denial of relief under CAT, along with other relief as well, and here Ms. Vo has met the burden that she is more likely than not to be tortured in return to Vietnam. I would first like to focus on all the consistencies that the IJ relied on in order to come to his adverse credibility finding. Counsel, excuse me. Yes. Counsel, apologies for interrupting. I want to cut to a point that is troubling me. There are three discrepancies which form the basis for the denial of the application. And for me, the most difficult hurdle for you is the voluntary disclosure of the sexual assault. How should we treat that? What did the BIA do wrong or the IJ? Yes, Your Honor. As far as the omission of that detail of sexual assault, I think it's important to note that it was not a new allegation, but yet a detail of what she had already been very upfront about that occurred during a second arrest. I think it's also important to note that she gave a reasonable explanation as to why she didn't mention it at the silent interview. And I don't believe the IJ gave her enough time to explain why she felt that her mother, who is still back in Vietnam, would find out about the sexual assault. So going back to your first assertion that the allegation of sexual assault that she volunteered, it wasn't in response to a question, but that she first stated at her merits hearing is just a detail. How do you reconcile that with our decisions in Silva-Pierra and in Garcia-Martinez? And just to remind you, because I know it's difficult to keep all these case names straight, Silva-Pierra held that a mere detail is not a sufficient basis for an adverse credibility determination. But when a person tells a more compelling story of persecution, then that is a basis for an adverse credibility determination. And then when you couple that with Garcia-Martinez, which held that rape or sexual assault may by itself rise to the level of persecution. It's not a detail. Its standing alone could establish persecution. So it's incredibly important. It's, in my view, a new claim. So how do you get around our case law on those issues? Well, I think Your Honor, the point in this particular case for Ms. Bowe is that she had already been consistent and very credible in her testimony regarding what had occurred during her first arrest. Well, that's true. I agree with you. And I'll tell you, I know you know this record extremely well, but I read every single statement, declaration, interview, testimony. I read all of it. I reread it last night. And I agree she's consistent about how she was slapped in the interviews and the length of interviews, etc. But she had a sworn statement after apprehension. Then a month later, she had a credible fear interview, not at an airport, not when she first arrived in the country. And then a month after that, she filed a declaration after she had counsel assisting her. And then she testified on two dates in the merits hearing. And she omitted this claim at every stage, sworn statement, credible fear interview, declaration, and only raised it for the first time in her merits hearing. So that's not consistent. I think your argument has to be it's just not in sufficient detail because her other consistencies aren't challenged. I mean, because she was consistent in one area doesn't mean she wasn't inconsistent in another. And I can understand the court's argument and reasoning in that. Definitely. I think that Ms. Bunkley did herself in her testimony where she stated, you know, that she knew she would have the opportunity to present her testimony and all of the details of where it occurred during when she testified in front of the judge. And that's exactly what she did. Okay. So when you look at her form that she signed under oath at her credible fear interview, and that she was advised of with the help of an interpreter, the statement at the outset explicitly states, it's very important for you to tell all details. This may be your only chance for you to present your evidence. And this is how we decided you can go before a judge. And it's all confidential so you can tell us everything. And the IJ noted that opening statement in her decision. So I understand what her explanation was. But how do you reconcile that with how she was advised and what she acknowledged she knew about the significance of her statements? Yes, Your Honor. And I think that this can be better explained just by the complexity of sexual assaults and coming forward with allegations of sexual assault and all the underlying things that happen, especially when you consider that Ms. Bunkley had a male asylum officer. She had been assaulted back in Vietnam by male police officers. And I think that those circumstances should be considered in this case. But why should we consider that since that's not in the record? I mean, that was not presented as an argument to the BIA or the IJ. And your client didn't state that that was the reason she didn't talk about this claim. And I agree with you. Our case law talks about that you don't always consider the failure to mention a sexual assault as an adverse credibility factor because there may be cultural reasons why a person wouldn't bring that information forward. But she didn't assert that as a reason. She asserted something entirely different about being concerned about her mother going to the police station. That's correct. And I would actually argue that it is cultural. And in fact, if you look at the transcript, what happened when she was in the midst of explaining this and when the IJ was asking, she very specifically said that she was concerned her family members here in the U.S. would then talk to her mother, which would make sense if she would have made these allegations in writing prior to that. And then during the testimony, maybe at that time she felt more comfortable that that information may not get out. And if you look at the actual transcript. So, I understand your position and I think it's perfectly valid and reasonable. But does that mean that it compels a different conclusion and there wasn't substantial evidence for the agency's determination? I do, Your Honor. When you look at the transcript, specifically on page AR-118, and when you're looking at the back and forth that the judge is asking Ms. Foe about this, in particular asking Ms. Foe why she believes her family here can talk to her mother, and then the hearing is abruptly finished because the IJ has to go to another matter. And I'm arguing here that in addition to the omission, which did not be used as a basis for adverse credibility, the IJ didn't let Ms. Foe flush out her actual explanation. So, this part, this discussion of the transcript covers several pages. And he asked her very specific questions about why she didn't include it, what her concerns were, where's your mother, where are you, why did you think your mother would hear about this, where's your cousin, are you going to live with your cousin? What more does the IJ have to do to give a person an opportunity to explain the discrepancy? I mean, are multiple questions on the topic not sufficient? Well, Your Honor, I think specifically in this case, when Ms. Foe says, I'm so afraid that my family in the United States, they won't know until my mom, and then the judge goes into questioning about what family are here in the United States, and then within the next few lines, he cuts the hearing short and continues for the next month because he has to do this. So, is your position that we should have a decision as basically a matter of law that several questions on the issue are not sufficient? That doesn't give the person an opportunity to explain? I think certainly in this circumstance, and in this particular case, when it's very clear that she was going somewhere with her, and again, this is a little bit of respondent that maybe doesn't give out the full answer. I mean, I agree with the judge, with you, Your Honor. But I think here, it's very clear that there was more explanation that the judge didn't give her an opportunity, and for the judge to then abruptly finish on that line of questioning, I think really makes the whole finding of adverse credibility finding wrong. Ms. Woods, what relief are you seeking? Well, I'm seeking reversal of the adverse credibility finding, and then alternatively, if the court finds that the BIA needs to look at this once again, or the IJ needs to look at the evidence once again, I mean, I don't think that the BIA reviewed all the evidence the IJ relied on to come to his adverse credibility finding, so if the court agrees with that, it can be manned back to the BIA. So you're asking for a remand, so that on this record, the adverse credibility finding isn't sufficient, but allowing the agency to take a further look at her credibility? Well, no, initially, Your Honor, I'm actually asking this court to reverse the adverse credibility finding. I think that there's sufficient evidence here on the record for the court to reverse the adverse credibility finding. A minute ago, though, you just said that she didn't get an adequate opportunity to explain her situation. That would suggest that if it goes back, they should take another look at the credibility determination. I anticipate that, Your Honor, and I think that does follow that rationale. Okay, why don't we hear from the government, and then we'll give you a chance. I'll give you some time for rebuttal. Thank you very much. Okay, Mr. Minnick? Yes, may it please the court, William Minnick, representing the respondents. The board based its adverse credibility determination on three factors, but I'll just jump to the third factor, which is petitioner omitted a significant incident of alleged harm from each of her two detailed declarations and did not provide a compelling explanation for the omission. What was wrong with her explanation that she didn't mention it because it was something she was afraid that her mother would learn? The immigration judge found that it didn't explain the omission because she didn't explain how her mother would find out. In other words, the immigration judge acknowledged, he said he understood why he wouldn't want her mother to know, but then she was provided several opportunities to explain how her mother would find out. This is a record of 118 and 119. She was non-responsive to the first couple of questions. She eventually said that maybe her family in the United States would tell her mother, but the immigration judge reasonably found that that wasn't compelling because she didn't explain how her family in the United States would find out. Well, did the agency or did anyone at any point along the way consider that explanation that her family might find out about it and that that's how her mother would learn about it, given that this is not someone who's learned it in the intricacies of the legal procedures of asylum applications? I found nothing in the record, by the way, that showed a follow-up to that query that I just posed to you. Do you have one? That's true, Your Honor. If you're asking that once she said her family in the United States might find out, she was not asked again how they would find out. But, I mean, here the immigration judge gave her an opportunity to explain the omission from her declaration. She gave her several opportunities, and she provided an explanation. The immigration judge wasn't then required to give her an opportunity to explain her explanation. And, again, this was on direct examination, so if she had more to say on the subject, counsel could have brought it out in direct or redirect. Well, let me tell you that the IJ, as the record supports, found the omission unreasonable, quote, just because Vo hadn't told anybody before, end quote. And then the BIA notes that Vo could not explain how her family would gain access to the information outlined in her declaration and asylum application. But there's a problem with the BIA's notation. Vo was never asked to explain how her family in America would get her declaration information. Am I right? You're correct that she was never asked how her family in the United States would find out about what was in her declaration. But, again, the immigration judge gave her the opportunity multiple times to explain the omission. She gave an explanation. The immigration judge then didn't have to go back and give her an opportunity to explain the explanation. And she was represented by counsel. This whole exchange occurred on direct, so if there were more to say on the subject, counsel could have brought it out on direct or redirect. You would agree with me, or maybe you won't, counsel, that this volunteered information at the end of this process was not central to her asylum claim, which was political, right? Well, I think it is central to her asylum claim, Your Honor, because it goes to the aspect of harm rising to the level of persecution. That was based on the meetings that she took by the police, supported by the medical records, right? Her claim was based in part on the physical abuse she suffered from the police, but this new allegation of sexual assault added a compelling and dramatic aspect to her claim of indecent touching and sexual risk that, I mean, unquestionably would have bolstered her application and fit squarely within this court's decision in Sobel Pereira of a compelling, a more compelling story of persecution than she laid out in her two detailed declarations. But this was not the basis for her application, right? And you would agree with me it's not uncommon for a woman not to immediately disclose a sexual assault? For obvious reasons. I would agree with that in general, Your Honor, but here she was specifically asked why she didn't disclose it, and she didn't say that she was embarrassed or ashamed or traumatized or that she had a cultural reluctance to not tell her male lawyer. She explicitly said or claimed why she didn't reveal it before, and she said it was because she was afraid her mom would find out and go to the police station and be beaten by police. And then later she said she didn't disclose it initially because she just thought she could testify about it in court. Didn't she also say something about the reason she didn't say it is because if you don't keep a secret, it doesn't stay secret, something along those lines, which I'm not sure I really understood. I assumed she was answering that in the context of why didn't you tell anyone in your process, your proceedings here in the United States. How does that fit into her testimony? Yes, Your Honor, I think that's record of 118, and that's in response to a question from the immigration judge. Why do you think your mother would find out? She says she references her family in the United States that they would tell her mother, and she says when a secret is leaked out, if you cannot keep a secret, who else can keep a secret for you? Again, she's obviously referring to her family in the United States, not keeping that detail from her mother in Vietnam. But again, the immigration judge reasonably concluded that she didn't explain how her family in the United States would ever find out what she had put in her declarations. There's a discrepancy that the agency relies upon with respect to dates, and I know it's more than a few days. It's almost two weeks, but nonetheless, our case law seems to treat typographical errors, misspellings, and errors in dates as trivial. Does the government argue that date inconsistencies in this case provide substantial evidence for the adverse credibility determination? We do, Your Honor, under the totality of the circumstances. I mean, all three of the bases identified by the board go to her three instances of arrest. And so there are multiple problems with what is the basis of her claim, which is her three arrests. And as far as the dates go, I mean, in Wren, the court said minor discrepancies that are attempts to enhance the claim have no bearing on credibility. But here, the dates in Wren, the issue was whether something happened on the second day of detention or the third day of detention. Here, the discrepancy is not minor because she said in her declaration that she was arrested four days after her release. But she testified she was re-arrested almost two weeks after her release. Actually, it's a nine-day discrepancy. Are you really going to rely on a nine-day discrepancy as something to support the decision, or can we agree that's, under Ninth Circuit law, trivial? I mean, the board didn't find it trivial. The board, under the totality of the circumstances, thought that it's not an attempt to enhance her claim. But the board relied on it because it shows that she couldn't keep her story right and straight about these three instances of arrest that were the basis of her claim. So it bears on her, the overall reliability of her testimony, especially under the totality of the circumstances, because of the other inconsistencies in the details of her alleged arrest. Well, I guess you and I can agree to disagree on that point. But let's next address her testimony that she had to find her own way home after her release on June 13, when she also testified that her mother often came to the jail to beg or ask for her release and picked her up on June 13. One could read that entire discussion to be entirely consistent. Do you agree? I don't agree, Your Honor, because she specifically testified. My mom took me home, record at 113. But she told the asylum officer on the road, I had to find my way home by myself, record at 324. And she had to find a way home by herself because no one at the jail was helping her get home. And her mother was there to bring her home. That is a consistent reading, is it not? Well, is that a reading that we make? I mean, as counsel, did we make that determination? Or is it a substantial evidence review? Well, it's substantial evidence, Your Honor. I mean, the words in the record at 113 are, my mom took me home, and at 324, I had to find my way home by myself. Did the petitioner herself ever argue that those explanations were, in fact, consistent? I thought her explanation was, I forgot my mom was there. Not that these are consistent. They meant the same thing. That's correct, Your Honor. She testified that during her asylum interview, she forgot her mother was there. But she testified that her mother was instrumental in obtaining her release. She said police were planning to hold her for 10 days to a month. But when her mother came every day and begged for her release, she was released after three days. That's record at 113. So her explanation that during her asylum interview, she just forgot that her mother was even there at the time was not compelling. And the agency reasonably rejected that. I appear to be out of time. Unless the court has additional questions, I'll ask the court to deny it. I don't have any questions. Okay. I don't hear any from the other panel members. So thank you. Thank you, Mr. Minnick. I'll put two minutes up on the clock for Ms. Woods to offer a little rebuttal. Thank you, Your Honor. I appreciate it. I do want to address the government's citing of Renby Holder. I think it's really important to note in that case, there was actually two separate instances where there was a discrepancy in the dates in Renby Holder. And the government is correct that the first instance, it was just a date difference. However, the second difference in the dates was two to three months of a difference in Renby Holder. And this court still found that that inconsistency in dates was nonmaterial and didn't enhance the claim. So I think I would argue that as far as the date of the second arrest in this case and rely on Renby Holder in that case. As far as the omission of sexual assault, as I stated before in my opening, this is a complex issue when it comes to sexual assault. And again, I think that's very clear in the way that Ms. Vo is answering the questions. And as this court already relied on, you know, she's made the statement about it's important to keep a secret. And that was actually about a question specifically asking about why it wasn't included in her written declaration. She then said, you know, I'm afraid my family here in the U.S. is going to tell her. And it's very clear in the transcript. There's two questions about what family is here in the U.S. And then the court says, I need to take a break. We'll resume. And then, in fact, what ended up happening is the case was continued out for a month. And I think as far as the inconsistency with the mother, I mean, Ms. Vo was very upfront during her testimony when asked about it. She said that she simply forgot about that detail during her silent interview. And I think that that is a reasonable explanation. It's also another trivial detail. It certainly does not enhance her claim. It's not relevant to whether or not she did suffer the harm during that first arrest. Ms. Woods, does our case law draw a distinction between rape? I mean, are the fact patterns in the cases where we considered cultural reasons why a person wouldn't come forward with information about a rape, were those the fact patterns in the cases at issue versus the conduct here, which was egregious but did not rise to the level of an actual rape? I do believe that the cases that the court has cited that the sexual assault was on a more grave level than in this particular case. And I think it's really important to note that the injuries that Ms. Vo had already testified, which are corroborated by the hospital records that occurred during that same incident during the second arrest. So, again, I do want to— Are you talking about the laceration on her head? The laceration on her head. Right. And she said that was because they threw a glass or a cup at her, right? Correct. The hospital records also indicate that she had an injury to her shoulder, and she testified that she had been beaten repeatedly with a baton during that second arrest. Again, she had also previously testified that that occurred to her during the first arrest. And so I think here, again, I am arguing that it is a detail about an allegation that she had been very forthcoming and consistent about, and one that clearly she was very conflicted, and there's some complexity as to why she did omit it during the silent interview. I don't mean to minimize the sexual overtones here, but could one view her allegation as just another aspect of physical abuse? Well, I think, Your Honor, in this circumstance, yes. I mean, I think I can see why it would have even more of an emotional effect on a woman to be treated like that by a male officer. I think given the entirety of that incident, everything that had already occurred, she was going to be—she walked out with serious injuries, whether they touched her like that or not. I think that that just adds another psychological harm to her. Okay. All right. Thank you. Thank you, counsel. We appreciate your arguments this morning, and the vote versus bar is now submitted. Thank you very much. Okay. Thank you.
judges: Paez, Zouhary, Bade